UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                )
ARNEY K. HEPBURN,               )
                                )
          Plaintiff,            )
                                )
     v.                         )    C.A. No. 14-368 S
                                )
BROWN UNIVERSITY,               )
                                )
          Defendant.            )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Plaintiff Arney Hepburn brings this federal civil rights action against his former employer, Brown University ("Brown" or the "University"). Hepburn alleges that Brown terminated his employment as a mail clerk in Brown's University Mail Services because of his race. Pending before the Court is Brown's Motion for Summary Judgment ("Motion"). (ECF No. 16.) Hepburn failed to oppose the Motion, despite receiving multiple extensions of time to do so. (See ECF Nos. 18 and 21 and corresponding text orders.) Nevertheless, in addition to the papers Brown submitted in support of its Motion, the Court has independently reviewed the record before it, and, for the reasons that follow, GRANTS Brown's Motion.

I.   Background[1]

Hepburn, a black male, began working for Brown's University Mail Services on July 1, 2001. (Def.'s Statement of Undisputed Facts ("SUF") ¶ 1, ECF No. 17.)  Fred Yattaw, the Brown employee in charge of the mailroom, interviewed, hired, and supervised Hepburn throughout his employment with the University. (Id. at ¶¶ 2, 3.)

Hepburn's January 2013 discharge was the culmination of a series of incidents in which Brown concluded Hepburn exhibited rude and aggressive conduct toward his co-workers. (Id. at ¶¶ 88-90.)[2]  The first incident occurred on or around October 1, 2008, when Hepburn and two other employees had a disagreement over the radio in the mailroom.  Though the three employees' versions of events differ, it is undisputed that Hepburn pushed one employee's hand away from the radio when

_____

[1] Hepburn did not file any documents disputing Brown's statement of facts.  Accordingly, where Brown's factual allegations are sufficiently supported by the record, the Court deems them undisputed. Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) ("Given appellant's failure to contest either the government's affidavits or the Statement, the jurisprudence of both Rule 56 and Local Rule 18 demands that the movant's version of the facts be taken as true.").

[2] While Hepburn has not submitted any evidence disputing Brown's statement of facts, Brown has helpfully highlighted where Hepburn disagrees with other witnesses' accounts of the events leading up to his termination.  The Court notes the relevant disputed facts and construes them in Hepburn's favor.

she attempted to change the station and that he lost his "cool" with the other employee. (Id. at ¶¶ 11-12.) As a result, Hepburn, and the two other employees received letters reminding them that Brown "has zero tolerance for inappropriate and unprofessional behavior in the work place" and requiring each employee to review Brown's relevant employment policies. (Id. at ¶ 13.)

The second incident occurred in July 2011 when Yattaw informed Hepburn of a minor schedule adjustment to accommodate the U.S. Post Office's new mail delivery time. (Def.'s SUF ¶¶ 15-16, ECF No. 17.) Yattaw and Hepburn disagree over the scope of Hepburn's response. Yattaw claims that Hepburn leaned over the desk and yelled "You can't do this!" (Id. at ¶¶ 18-19.) Hepburn maintains that all he said was that he could not work the new schedule and that Yattaw should "dock him." (Id. at ¶ 20.) Neither party, however, disputes that Hepburn resisted the schedule, told Yattaw to "dock him," and that, in response, Yattaw put a letter in Hepburn's file. (Id. at ¶¶ 17, 21.) The letter warned Hepburn that his "unprofessional conduct and communications with [Yattaw], specifically, [Hepburn's] outburst and overreaction to the news of a change in your work schedule, is unacceptable and will not be tolerated." (App. of Ex. to SUF 18, ECF No. 16-3.) The letter also

3

reminded Hepburn that, as a member of the Brown community, he had "an obligation to communicate with [his] manager, co-workers, and others in a professional and appropriate manner." (Id.)  And the letter went on to advise Hepburn that "[i]mmediate and sustained improvement in [Hepburn's] conduct and communications is required.  Any further display of unprofessional and inappropriate conduct . . . may result in further disciplinary action." (Id.)

The next incident occurred in September 2012 when Hepburn entered Yattaw's office to retrieve keys for the Brown Office Building mailboxes.  (Def.'s SUF ¶ 25, ECF No. 17.) Yattaw informed Hepburn that the delivery should have been completed twenty minutes earlier and began to leave his office to speak with the supervisor responsible for the route.  (Id. at ¶¶ 26-27.)  Yattaw claims that Hepburn told him to calm down and then yelled at Yattaw as Yattaw left his office. (Id. at ¶¶ 27-28.)  Hepburn disputes that he yelled at Yattaw, but concedes that he told Yattaw to calm down and followed Yattaw from his office.  (Id. at ¶¶ 33-34.)  After the incident, on September 24, 2012, Yattaw gave Hepburn a final written warning.  (Id. at ¶ 35.)  The warning referenced Hepburn's prior July 2011 letter and again reminded him that he had "an obligation to communicate with your manager, co-workers, and others in a professional manner." (App. of Ex.

4

to SUF 19, ECF No. 16-3.)  It went on to state that Hepburn's "present outburst is a clear indication that [Hepburn] [] failed to sustain a professional manner while communicating with [Yattaw]."  (Id.)  The letter concluded by informing Hepburn that "[a]ny further display of unprofessional and inappropriate behavior in the workplace will result in further disciplinary action up to and including termination." (Id. at 20.)

The final incident occurred three months later, on January 4, 2013.  A senior mail clerk, Scott Caldwell, saw Hepburn with mail that Caldwell believed Hepburn should not have been carrying.  (Def.'s SUF ¶¶ 39, 42, ECF No. 17.) According to Caldwell, when he questioned Hepburn about the mail, he claims that Hepburn became belligerent.  (Id. at ¶ 43.)  Even after Caldwell told Hepburn he had made a mistake and Hepburn was properly in possession of the mail, Caldwell testified that Hepburn remained belligerent going so far as to shout that Caldwell should not mess with him and to watch out.  (Id. at ¶ 44-46.)  Then, later that day, Hepburn left work without getting authorization.  (Id. at ¶ 47.)

Yattaw was on vacation the day of the alleged incident. When he learned about it the following Monday, he took statements from Caldwell and two additional witnesses, Shobha Shah and Sonya Barros.  (Id. at ¶ 48.)  Caldwell recounted

the facts described above. (See App. of Ex. to SUF 8-9, ECF No. 16-2.) Barros and Shah both recalled that on January 4, they heard raised voices or "screaming." (Def.'s SUF ¶¶ 50, 55, ECF No. 17.) Yattaw then notified Michael Elias, University Mail Service's Human Resources representative, and Elizabeth Gentry, Brown's Executive Vice President of Finance and Administration, of the incident and provided them with Shah and Barros's statements. (Id. at ¶ 48.)

Elias conducted an investigation into the incident. (App. of Ex. to SUF 12-13, ECF No. 16-3.) After reviewing Shah and Barros's statements, Elias interviewed Caldwell, Roland Dube, a customer at the mail counter when the incident occurred, and Hepburn. (Def.'s SUF ¶¶ 59, ECF No. 17.) According to Elias, Caldwell and Dube had similar recollections of the altercation: Hepburn pointed his finger in Caldwell's face and began yelling at Caldwell in a loud, angry, and aggressive manner. (Id. at ¶¶ 60-61.) In his interview with Elias and at his deposition, Hepburn corroborated many of these facts. (Id. at ¶ 68.) Hepburn admitted that he pointed his finger at Caldwell and told him, albeit in a quiet voice, "you're not my boss." (Id. at ¶ 82.) Hepburn also admitted getting upset, though claims it was "in a nice way." (Id. at ¶¶ 77, 84.) And Hepburn admitted leaving work early. (Id. at ¶ 68; App. of Ex. to SUF 128

(32:14-18), ECF No. 16-4.)   At the conclusion of the interview, Elias advised Hepburn that his conduct amounted to serious policy violations, and, in light of his prior warnings concerning insubordination and inappropriate behavior, termination of his employment was a possibility. (Def.'s SUF ¶ 69, ECF No. 17.)

Shortly after his meeting with Elias, Hepburn met with and provided a letter to Wendy McCrae-Owoeye, Brown's Director of Staff Diversity and Brown's Equal Employment Opportunity and Affirmative Action Officer. (Id. at ¶ 70.) Hepburn explained that he felt harassed and that his rights were being violated by Caldwell. (Id.)   In a subsequent email, however, he indicated that he did not want to file a discrimination complaint. (Id. at ¶ 71.)

Brown terminated Hepburn's employment on January 16, 2013. (App. of Ex. to SUF 22, ECF No. 16-3.)   The decision was a collaborative one between Yattaw, Elias, and Gentry. (Def.'s SUF ¶ 92, ECF No. 17.)   As outlined in a letter signed by Yattaw, each felt that termination was warranted due to "recurring instances of aggressive, inappropriate, and unprofessional conduct on the job." (Id.; see App. of Ex. to SUF 22, ECF No. 16-3.)   Specifically, the letter referenced Hepburn's July 2011 written warning and his subsequent final written warning for inappropriate on-the-job conduct. (App.

7

of Ex. to SUF 22, ECF No. 16-3.)  Then the letter indicated
that Brown determined that Hepburn, again, engaged in
threatening and aggressive behavior on January 4, 2013 and
walked off the job.  (Id.)  Taken together, Brown believed
these events amounted to a "demonstrated pattern of
intimidating and disruptive behavior" warranting termination
of his employment.  (Id.)

II.  Standard of Review

Summary judgment is appropriate "if the movant shows
that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a).  An issue of fact is only considered
"'genuine' if it 'may reasonably be resolved in favor of
either party.'"  Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st
Cir. 1997) (quoting Maldonado-Denis v. Castillo-Rodriguez, 23
F.3d 576, 581 (1st Cir. 1994)).  When deciding a motion for
summary judgment, the court must "examine[] the entire record
'in the light most flattering to the nonmovant and indulg[e]
all reasonable inferences in that party's favor.'"  Id. at
959 (quoting Maldonado-Denis, 23 F.3d at 581).

Further, where a party fails to respond to a motion for
summary judgment, the court cannot automatically grant the
moving party's motion.  See De Jesus v. LTT Card Servs., Inc.,
474 F.3d 16, 21 (1st Cir. 2007).  Instead, "[t]he court first

must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law." Jaroma v. Massey, 873 F.2d 17, 20 (1st Cir. 1989).

III. Discussion

The only claim before the Court is one alleging racial discrimination. (See Compl. ¶ 3, ECF No. 1; EEOC Charge of Discrimination, App. of Ex. to SUF 44, ECF No. 16-3.)  Since Hepburn has presented no direct evidence of discrimination, he must proceed under the McDonnell Douglas burden shifting framework. Pina v. Children's Place, 740 F.3d 785, 796 (1st Cir. 2014).  As the First Circuit has stated, under this framework

> [a] plaintiff must establish a prima facie case of discrimination, and if he succeeds, the burden of production shifts to the defendant to produce evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason. If the defendant produces such evidence, the McDonnell Douglas framework disappears and the sole remaining issue is discrimination vel non, leaving the plaintiff an opportunity to show that the reasons offered by the defendant were a pretext for discrimination.

Pearson v. Massachusetts Bay Transp. Auth., 723 F.3d 36, 40 (1st Cir. 2013) (Souter, J.) (internal citations and quotation marks omitted).  Here, Brown concedes that Hepburn can establish a prima facie case of discrimination. Nevertheless, Brown argues that it is entitled to summary

judgment because it has presented a legitimate reason for terminating Hepburn's employment that was not "pretext" for discrimination.  Brown's argument has merit.

Brown easily satisfies its initial burden of articulating a legitimate reason for Hepburn's discharge. Brown repeatedly warned Hepburn about the perils of being unprofessional, aggressive, and disrespectful at work.  It gave him two written warnings, one of which was a final written warning, after he raised his voice during interactions with co-workers and supervisors.  And Brown admonished Hepburn that continuing such conduct could result in the termination of his employment.  Despite these warning, Brown determined that Hepburn had again acted in a "threatening and aggressive manner" towards another employee in January 2013.  The record contains no reason to doubt the sincerity of Brown's conclusions surrounding the January 2013 incident (or any of the prior incidents), giving Brown a legitimate reason for its decision to fire Hepburn.  See, e.g., Pina, 740 F.3d as 797 (evidence that termination resulted from employee's inappropriate, unprofessional, and harassing statements satisfied employer's initial burden under McDonnell Douglas); Pearson, 723 F.3d at 41 (repeated insubordination "is obviously sufficient to support an adverse employment action").

Hepburn, of course, could avoid summary judgment by presenting evidence to support a showing of pretext.  To make such a showing, Hepburn could point to things like "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons."  Pina, 740 F.3d at 797 (quoting Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 42 (1st Cir. 2001) (internal quotation marks omitted)).  Hepburn, however, did not submit any evidence or argument in support of his case.  To use the First Circuit's language, he did not seize the "opportunity to show that the reasons offered by [Brown] were a pretext for discrimination."  Pearson, 723 F.3d at 40.  Hepburn, thus, did not carry his burden, and Brown is entitled to summary judgment.

IV.  Conclusion

For the forgoing reasons, Defendant's Motion for Summary Judgment is GRANTED.


IT IS SO ORDERED.

_WESmith_ (signature)

William E. Smith
Chief Judge
Date:  April 7, 2016

11